**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

DERRICK L. HARRIS,

                Plaintiff,

vs.                                           Case No. 3:11-cv-40-J-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
_____/

## OPINION AND ORDER[1]

### I. Status

Derrick L. Harris ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying a claim for supplemental security income under the Social Security Act. A review of the record and this Court's docket reveals that two applications for benefits under the Social Security Act have been filed by Plaintiff, the second of which is at issue in this appeal. The first application, filed on April 15, 2002 for disability insurance benefits, was denied initially and was denied upon reconsideration. See Harris v. Astrue, Report and Recommendation (Doc. No. 17), No. 3:07-cv-339-J-33MCR (M.D. Fla. May 29, 2008), at 1. Plaintiff appealed the denial to this Court, and on July 23, 2008, the denial was affirmed. See generally id.; Harris, Order (Doc. No. 20), No. 3:07-cv-339-J-33MCR (M.D. Fla. July 23, 2008) (adopting Report and Recommendation). Plaintiff then

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 18), filed June 8, 2011; Order of Reference (Doc. No. 19), entered June 9, 2011.

appealed to the United States Court of Appeals for the Eleventh Circuit, which too affirmed the denial on May 22, 2009. See Harris v. Comm'r of Soc. Sec., 330 F. App'x 813 (11th Cir. 2009) (unpublished), petition for reh'g en banc denied, 350 F. App'x 435 (11th Cir. 2009) (table). Just after the administrative appeal process ended with respect to the denial but prior to initiating an appeal in this Court, Plaintiff on March 14, 2007 filed a second application: the application now at issue. See Harris, Complaint (Doc. No. 1), No. 3:07-cv-339-J-33MCR, at 3 (stating that the appeals council affirmed the denial on February 21, 2007); Transcript of Administrative Proceedings (Doc. No. 13; "Tr.") at 136-40. In the application at issue, Plaintiff alleged a disability onset date of April 1, 2000; however, Plaintiff amended the alleged onset date two days after the application was filed to February 22, 2007. Tr. at 136-40. The application was denied initially, Tr. at 71-72, 75-77, and was denied upon reconsideration, Tr. at 73-74, 81-83. Plaintiff then requested and was granted a hearing before an Administrative Law Judge ("ALJ"). Tr. at 112-21. After holding a hearing on February 18, 2009, Tr. at 38-69, the ALJ issued a Decision on March 30, 2009, finding Plaintiff not disabled from March 14, 2007 (the date the application was filed) through the date of the Decision, Tr. at 28-37. On November 12, 2010, the Appeals Council denied Plaintiff's request for review, making the ALJ's written Decision the final decision of the Commissioner. Tr. at 1-3. On January 12, 2011, this action was commenced under 42 U.S.C. § 1383(c)(3), by the timely filing of the Complaint (Doc. No. 1) seeking review of the Commissioner's final decision. The available administrative remedies have been exhausted, and the case is properly before the Court.

## II.  Plaintiff's Background/Issue Raised

Plaintiff was thirty-nine years old when he had his hearing before the ALJ on February 18, 2009.  Tr. at 44.  He has a tenth grade education, but he reads at a fourth grade level. Tr. at 44, 54.  While in school, Plaintiff required special education classes.  Tr. at 44.  Plaintiff has past relevant work as a dishwasher, a prep cook, a food assembler, a furniture deliverer, and a truck driver helper.  Tr. at 45-48, 62, 162, 177, 202, 263.  The claim of disability is based on an injury to Plaintiff's right knee, as well as diabetes, hypertension, and a "mental condition," Tr. at 176, but only the ALJ's findings with respect to the "mental condition" are at issue in this appeal.

Plaintiff raises one issue: whether the ALJ properly determined that Plaintiff's limitations do not meet Listing 12.05(C) (defining the impairment of mental retardation) of the Listings of Impairments ("the Listings") found at 20 C.F.R. § 404 app.  Plaintiff's Memorandum of Law in Opposition to the Commissioner's Decision Denying Plaintiff Disability Insurance Benefits (Doc. No. 16; "Pl.'s Mem."), filed May 23, 2011, at 1.  For the reasons explained herein, the undersigned concludes the ALJ properly found that Plaintiff does not meet the Listing at issue.  Therefore, the Commissioner's final decision is due to be affirmed.

## III.  The ALJ's Decision

When determining whether an individual is disabled,[2] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining

---

[2] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

-3-

as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 28-37. At step one, the ALJ determined Plaintiff "has not engaged in substantial gainful activity since March 14, 2007, the application date." Tr. at 30 (emphasis and citation omitted). At step two, the ALJ observed Plaintiff suffers from "the following severe impairments: knee disorder, diabetes, hypertension, asthma, depression, and borderline intellectual functioning."[3] Tr. at 30 (emphasis omitted). The ALJ then found at step three that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 31 (emphasis and citation omitted). The ALJ ascertained Plaintiff has the residual functional capacity ("RFC") to do the following:

> lift and/or carry, and push/pull 20 pounds occasionally and 10 pounds frequently; walk and/or stand for approximately six hours out of an eight hour day, and sit for approximately six hours out of an eight hour day. He can use his arms and hands for grasping, holding and turning objects without limitation. He cannot climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs and occasionally perform balancing, stooping, kneeling, crouching,

---

[3] Although the ALJ initially found Plaintiff's depression to be severe, in the very next sentence she found it to be non-severe. Tr. at 30. This discrepancy is ultimately immaterial to the analysis.

and crawling. He must avoid working around dangerous work hazards and exposure to extreme cold and heat. [Plaintiff] requires the opportunity to change positions as frequently as every 45 minutes for brief periods within his workstation. Secondary to his borderline intellectual functioning, he is limited to routine, repetitive tasks. Additionally, he is limited to low stress, non productive pace jobs.

Tr. at 32-33 (emphasis and citation omitted). Then, at step four, the ALJ determined Plaintiff "is unable to perform any past relevant work." Tr. at 35 (emphasis and citation omitted). Finally, at step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ found "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. at 36 (emphasis and citation omitted). The ALJ concluded Plaintiff "has not been under a disability . . . since March 14, 2007, the date the application was filed." Tr. at 36 (emphasis and citation omitted).

## IV. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and

supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## V. Discussion

Plaintiff contends that he meets the Listing for mental retardation, and therefore he "is entitled to presumptive disability at step 3 of the Sequential Evaluation." Pl.'s Mem. at 14. Specifically, Plaintiff argues he meets section C of Listing 12.05. Id. at 1-2, 14. As explained below, section C requires a "valid verbal, performance, or full scale IQ of 60 through 70," among other things. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. Plaintiff points to one IQ test in the record in which he scored within the required range, Pl.'s Mem. at 4, and he argues that higher scores falling outside the required range are simply the result of a so-called "practice effect" of taking the IQ test multiple times, id. at 10-14. Plaintiff compares the results of IQ tests to those of the SAT and the LSAT. Id. at 10. Plaintiff argues that all scores can "go up with practice[.]" Id. In support of that comparison, Plaintiff devotes a considerable portion of his memorandum to regurgitating large portions of a 2006 article entitled, "Retesting in Selection: A Meta-Analysis of Practice Effects for Tests of Cognitive Ability" (the "2006 article") authored by various individuals at Cornell University and DePaul University. Id. at 10-14.

Defendant argues that despite the existence in the record of the IQ test with scores in the required range, Plaintiff does not meet or equal all of the requirements of the Listing at issue. Memorandum in Support of the Commissioner's Decision (Doc. No. 21; "Def.'s Mem."), filed July 18, 2011, at 5. Specifically, Defendant points to the ALJ's finding that Plaintiff's adaptive functioning is inconsistent with mental retardation. Id. at 7 (citing Tr. at 34). In addition, Defendant states that the ALJ questioned the validity of the IQ scores within the required range because later IQ scores fell outside the required range. Def.'s Mem. at 7. Defendant also points out flaws in the material Plaintiff relies upon for his contention that his scores increased due to "practice effect," and Defendant contends that "Plaintiff's allegation of a 'practice effect' is wholly unfounded and unsupported by the record as applied to him and is not supported by any cited law." Id. at 8.

Listing 12.05 describes the condition of Mental Retardation and the requirements at issue:

> 12.05 Mental Retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.

The ALJ thoroughly considered and discussed whether Plaintiff meets Listing 12.05. Tr. at 31-32; see also Tr. at 34. As to the section C requirements, the ALJ specifically recognized that the record contains IQ scores within the required range, but she rejected those scores because "later IQ testing revealed significantly higher scores." Tr. at 31. The ALJ then explained:

> I have carefully considered the WAIS-III testing scores from psychologist, C. Russell Clifton, Jr., Ph.D., on January 9, 2006, which revealed a Full Scale IQ of 70, a Verbal score of 66, and a Performance score of 79. Dr. Clifton diagnosed borderline intellectual functioning. The administration of the WAIS-III by Raymond Schoenrock, Ph.D., on July 22, 2007, revealed a Verbal IQ score of 79, a Performance IQ score of 104 and a Full Scale IQ score of 89, placing [Plaintiff]'s level of intellectual functioning at the upper end of the low average range. His Verbal IQ score of 79 was noted to actually fall at the upper end of the borderline range and his Performance IQ score of 104 was said to be well within the average range. Dr. Schoenrock's diagnosis was a learning disorder.

Tr. at 31 (citations omitted). Then, the ALJ specifically considered and rejected Plaintiff's argument regarding the practice effect of taking multiple IQ tests:

> Regarding the discrepancy in IQ test results, [Plaintiff]'s representative argued that the theory with repetitive tests is that an individual does better on the test but remains mentally retarded. The representative only knew about these two specific tests [documented in the record], although she said that [Plaintiff] took tests when he was in school. The representative's argument makes little sense especially because the tests were intermittently given and were years apart.

Tr. at 32. The ALJ discussed Plaintiff's adaptive skills, past work performance, and reading level, before finally determining that Plaintiff does not meet Listing 12.05(C). Tr. at 32; see also Tr. at 34 (stating Plaintiff's "adaptive functioning is higher than that of a mentally retarded individual, and he has demonstrated th[e] ability to work . . . alone without a sheltered environment and has not had any work problems due to reduced mental functioning").

Substantial evidence supports the ALJ's rejection of the earlier IQ scores, as well as the finding that Plaintiff's adaptive functioning and other behavior are inconsistent with an individual suffering from mental retardation. Each is addressed in turn.

Regarding the rejection of the earlier IQ scores, the ALJ correctly noted that the later tests revealed higher scores outside the range of the requirements of section C. Tr. at 31; compare Tr. at 351, with Tr. at 428. Also, the ALJ rejected Plaintiff's argument regarding the "practice effect" of taking multiple IQ tests and achieving higher scores because the tests were given intermittently and because they were given years apart. Tr. at 32. Plaintiff's reliance on the 2006 article suggesting that individuals can improve certain scores with practice is unavailing given that the record does not in any way support the theory that his scores increased merely due to a "practice effect."

In addition to the rejection of the earlier IQ scores, the ALJ found that Plaintiff's adaptive functioning and other behavior are inconsistent with an individual suffering from mental retardation, a finding that is also supported by substantial evidence in the record. Even "a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted); Gray v. Comm'r of Soc. Sec., No. 11-12839, 2011 WL 6091196, at *2 (11th Cir. Dec. 8, 2011) (unpublished) (stating that an "ALJ could have found that [the plaintiff's] IQ score of 66 was inconsistent with other evidence of his activities and behavior, and therefore was not conclusive") (citation omitted). The ALJ correctly noted that Plaintiff is able to perform in a work environment, his problems with work were physical in nature, he reads at a fourth

grade level, "which while not vast, is not suggestive of mental retardation," he has "demonstrated a good memory for health and work issues," and he "was able to describe in detail how he managed his diabetes. . . ." Tr. at 32, 34. Further, in Plaintiff's prior appeal, the Eleventh Circuit found substantial evidence to support a determination that Plaintiff did not meet the requirements of section C because "he was never diagnosed with mental retardation, only borderline intellectual functioning," and because he "did not have the necessary deficits in adaptive functioning . . . ." Harris, 330 F. App'x at 815. Plaintiff's latest appeal suffers from the same fatal defects.[4]

### VI. Conclusion

After a thorough review of the record, the undersigned is convinced the Commissioner's final decision is supported by substantial evidence. Accordingly, it is

**ORDERED:**

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2. The Clerk of Court is directed to close this case.

**DONE AND ORDERED** at Jacksonville, Florida on March 19, 2012.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record

---

[4] One examining psychologist on June 25, 2007 gave a "[p]rovisional" diagnosis of "Mild Mental Retardation" but specifically noted that IQ testing would be needed. Tr. at 421-24.